## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:17-cv-02534-REB-STV

CRAIG HOSPITAL, a Colorado non-profit corporation,

     Plaintiff,

v.

TYSON FOODS, INC., a Delaware corporation, the TYSON FOODS INC. HEALTH BENEFIT PLAN (Actives & Cobra), an employee benefit plan, TYNET CORPORATION, a Delaware corporation and TYSON SHARED SERVICES, INC., a Delaware corporation, and NATIONAL COMP CARE, INC., a Delaware Corporation,

     Defendants.

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

---

The Plaintiff, Craig Hospital, by and through its attorneys, Ewing Law PC, and for a Complaint and Jury Demand against the Defendants, Tyson Foods, Inc., the Tyson Foods, Inc. Health Benefit Plan (Actives & Cobra), Tynet Corporation Tyson Shared Services, Inc. and National Comp Care, Inc. , states as follows:

### JURISDICTION AND VENUE

1.    Plaintiff Craig Hospital is a Colorado non-profit corporation with a principal place of business located at 3425 S. Clarkson Street, Englewood, Colorado 80113.

2.    Defendant Tyson Foods, Inc. is a Delaware corporation with a principal place of business located at 2200 W. Don Tyson Parkway, Springdale, Arkansas 72762.

3.      Defendant Tyson Food, Inc.'s registered agent for service of process is The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

4.      Defendant Tyson Foods, Inc.'s many brands include Tyson, Jimmy Dean, Hillshire Farm, and Sara Lee.  Tyson Foods, Inc. transacted business in Colorado sufficient for the Court to exercise jurisdiction over Tyson Foods, Inc. pursuant to Colorado's long-arm statute, C.R.S. § 13-1-124(1)(a), by placing a large volume of products into the stream of commerce in Colorado.  In addition, representatives of Tyson Foods, Inc. entered into a contract with Craig Hospital that entitled it to a discount for services provided to the patient at issue.  Finally, Tyson Foods, Inc. committed a tort in this state making personal jurisdiction appropriate pursuant to C.R.S. § 13-1-124 (1)(b).

5.      Upon information and belief Defendant Tynet Corporation is a Delaware corporation and a subsidiary of Tyson Foods, Inc. Upon information and belief, Defendant Tynet Corporation's principal place of business is located at 1300 Johnson Road, Springdale, AR 72762.

6.      Defendant Tynet Corporation's registered agent for service is The Corporation Company, 124 W. Capitol Avenue, Suite 1900, Little Rock, AR 72201.

7.      Defendant Tynet Corporation transacted business in Colorado sufficient for the Court to exercise jurisdiction over Defendant Tynet Corporation pursuant to Colorado's long arm statute, C.R.S. § 13-1-124(1)(a), by negotiating a contract accepting compensability for the Patient's[1] stay and entitling it to a

---

[1] The Patient will not be named herein to protect his/her privacy.  The workers' compensation claim number for Patient is 2016081196.

2

discount on the medical and rehabilitation services provided by Craig Hospital and paying claims in Colorado.  In addition, Tynet Corporation committed a tort in the State of Colorado making personal jurisdiction appropriate pursuant to C.R.S. § 13-1-124(1)(b).  Tynet Corporation may also administer claims for other workers' compensation claims for various Tyson Foods, Inc. subsidiaries for workers injured in Colorado.

8.      Defendant Tyson Foods Inc. Group Health Plan (Actives & Cobra) (hereinafter also referred to as "Health Plan") is an employee welfare benefit plan subject to ERISA.  Its Plan Sponsor and Plan Administrator in 2016 were Tyson Foods, Inc.  The address of the Plan Sponsor and Plan Administrator, as noted on the Health Plan's 2016 Form 5500, is P.O. Box 2020, Springdale, Arkansas 72765-2020.

9.      Upon information and belief, the registered agent for the Health Plan is Tyson Foods, Inc., who can be served through its registered agent, as set forth in paragraph 3 above.

10.     The Health Plan transacted business in Colorado sufficient for the Court to exercise jurisdiction over Defendant Health Plan pursuant to Colorado's long arm statute, C.R.S. § 13-1-124(1)(a), by and through its agents when it preauthorized Patient's care at Craig Hospital, issued payment for a portion of Patient's care at Craig Hospital, and recouped the payments it made for Patient's care at Craig Hospital.  Health Plan also participates in the Blue Card program wherein it agreed to provide coverage for its plan participants and beneficiaries in other states, including Colorado.  In addition, Health Plan committed a tort in the

State of Colorado making personal jurisdiction appropriate pursuant to C.R.S. § 13-1-124(1)(b).

11.     Tyson Shared Services, Inc. is a Delaware corporation with a principal place of business located at 2210 Oaklawn Drive, Springdale, Arkansas 72762.

12.     Tyson Shared Services, Inc.'s registered agent for service is The Corporation Company, 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112-1268.

13.     Defendant Tyson Shared Services, Inc. is a corporation that does business in Colorado and is in good standing with the Colorado Secretary of State.

14.     Defendant National Comp Care, Inc. is a Delaware Corporation with a principal place of business located at 2210 Oaklawn Drive, Springdale, Arkansas 72762-6999.

15.     National Comp Care, Inc.'s registered agent for services of process is CT Corporation System, 124 West Capitol Avenue, Suite 1400, Little Rock, Arkansas 72201.

16.     National Comp Care, Inc. transacted business in Colorado sufficient for the Court to exercise jurisdiction over Defendant National Comp Care, Inc. pursuant to Colorado's long arm statute, C.R.S. § 13-1-124(1)(a) by negotiating a contract accepting compensability for the Patient's[2] stay and entitling it to a discount on the medical and rehabilitation services provided by Craig Hospital and paying claims in Colorado.  In addition, National Comp Care, Inc. committed a tort

---

[2] The Patient will not be named herein to protect his/her privacy.  The workers' compensation claim number for Patient is 2016081196.

4

in the State of Colorado making personal jurisdiction appropriate pursuant to C.R.S. § 13-1-124(1)(b). National Comp Care, Inc. may also administer claims for other workers' compensation claims for various Tyson Foods, Inc. subsidiaries for workers injured in Colorado.

17.     This is an action brought by the Plaintiff for breach of contract against and violation of C.R.S. § 10-3-1115 against Tynet Corporation, Tyson Foods, Inc. Tyson Shared Services, Inc. and National Comp Care, Inc. Plaintiff also brings claims for non-disclosure or concealment (deceit based upon fraud), and unjust enrichment against Tyson Foods, Inc., Tynet Corporation,[3] Tyson Shared Services, Inc., and the Tyson Foods Inc. Group Health Plan (Actives & Cobra) and National Comp Care, Inc. Plaintiff brings a claim for negligent misrepresentation and equitable estoppel against Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan.

## GENERAL ALLEGATIONS

18.     All preceding allegations are incorporated herein by reference.

19.     Patient, an employee of a subsidiary of Tyson Foods, Inc., was injured in a single vehicle motor vehicle accident on or about March 16, 2016 on his way to a work trip in Arkansas. Patient sustained a C7 burst fracture and was ultimately diagnosed with C6 ASIA A complete tetraplegia.

---

[3] The nondisclosure/concealment (deceit based upon fraud) claim is pled against Tynet Corporation, Tyson Foods, Inc. National Comp Care, Inc. and Tyson Shared Services, Inc. in the alternative.

20.     After receiving acute medical care in Arkansas, Patient was admitted to Craig Hospital on March 30, 2016 where Patient remained hospitalized until his/her discharge on June 25, 2016.

21.     At the time of Patient's admission, Patient was a participant in the Tyson Foods Inc. Group Health Plan (Actives & Cobra).   Blue Advantage Administrators of Arkansas preauthorized Patient's care at Craig Hospital and continued to authorize his care at Craig Hospital.

22.     On or about May 23, 2016, Craig Hospital received a call from Lisa Coy, an employee of National Comp Care, Inc. and a representative of Tyson Foods, Inc.'s self-funded workers' compensation plan.  Ms. Coy told Craig Hospital that effective May 12, 2016, the Tyson Foods, Inc.'s workers' compensation plan would be paying for Patient's stay at Craig Hospital.   Craig Hospital's understanding was that Tyson Foods, Inc.'s self-funded workers' compensation plan would be "primary" effective May 12, 2016 while the Health Plan was "primary" from the date of the Patient's admission up to May 12, 2016.

23.     In a telephone call with Craig Hospital's admission's representative on May 24, 2016, Craig Hospital's representative asked if the Health Plan, which was also self-funded, would deny coverage given that worker's compensation was involved.  Ms. Coy advised that she was uncertain if Tyson's health plan would "make them [the workers' compensation plan] go back and pay from the beginning," as follows:

*KAREN MATHIAS:  Well, that's a possibility but once it becomes Work Comp, uh, can't the commercial insurance deny the claim altogether?*

*LISA COY:  Possibly. But Tyson's self-insured on Group Health too. Blue Cross is, you know, our carrier.*

*KAREN MATHIAS:  Uh-huh.  So you would have –*

*LISA COY:  We're self-insured on both.  So I'm not certain that they will go back and make us pay from the beginning.*

*Is that what you're asking, they could deny it and have us pay from the very beginning?*

*KAREN MATHIAS:  Well, I just wondered if that might happen.    I mean, you know, uh – uh, because that's an exclusion in almost every policy.*

*LISA COY:    Right, right.*

*KAREN MATHIAS:  (Inaudible.)*

*LISA COY:  Yeah.*

*KAREN MATHIAS:  So – so you know.*

*LISA COY:  Yeah, so I'll know – you know, we're all trying to muddle through this, you know? It's like, okay, well, where do we pick up and are we picking up from the day the claim was filed or – you now, so – so right now we're picking up from May 12th –*

*See* Transcript of call attached as Exhibit 1, p.5:18-25, 6:1-18.

24.     The telephone call referenced in the preceding paragraph left Craig Hospital with the impression that both Tyson's health plan and Tyson's workers' compensation plan were self-funded, Craig Hospital would be paid by either one or both of Tyson's self-funded plans.

25.     On or about May 31, 2016, Craig Hospital and Tynet Corporation, as third-party administrator for the Tyson Foods, Inc., workers' compensation plan entered into a contract entitled "Craig Hospital Workers' Compensation Agreement" ("Contract") wherein the Tyson Foods worker's compensation plan agreed to "accept compensability for admission of the patient listed above."

26.     Given the uncertainty regarding whether the Health Plan would go back and "make them [the workers' compensation plan] pay from the beginning," the Contract did not indicate that it was effective May 12, 2016 to ensure that the workers' compensation plan would receive the agreed upon discount for any services prior to May 12, 2016.

27.     As evidenced by the Contract between Tynet Corporation and Craig Hospital and Exhibit 1, Tynet Corporation asked that it pay Craig Hospital at the same rate as the Health Plan.  *See* Exhibit 1, p. 8:6-14.

28.     At no time during the course of negotiating the Contract between Tynet Corporation and Craig Hospital or at any time during the Patient's hospitalization at Craig Hospital did any representative of Tyson Foods, Inc., the Health Plan, Tyson Shared Services, Inc., Tynet Corporation or National Comp Care, Inc.  inform Craig Hospital that the Health Plan had an exclusion for "bodily

injury or illness arising from or in the course of any employment (whether or not covered by workers' compensation coverage)…".

29.     At no time during the course of negotiating the Contract between Tynet Corporation or at any time during Patient's hospitalization at Craig Hospital did any representative of Tyson Foods, Inc., the Health Plan, Tyson Shared Services, Inc.  Tynet Corporation  or National Comp Care, Inc. tell Craig Hospital that Tyson Foods, Inc. would refuse to issue payment for Patient's care at Craig Hospital prior to May 12, 2016 in the event that the Health Plan denied coverage for Patient's care prior to May 12, 2016 or recoup the payments made.

30.     Consistent with Craig Hospital's understanding that the Health Plan was the primary payor prior to May 12, 2016, the Health Plan issued payment to Craig Hospital for Patient's care from March 30, 2016 through April 13, 2016 in the amount of $55,099.22 on May 4, 2016.

31.     Consistent with Craig Hospital's understanding that the Health Plan was the primary payor prior to May 12, 2016, the Health Plan issued payment to Craig Hospital for Patient's care for the time period spanning April 14, 2016 through April 28, 2016 in the amount of $68,512.44 on June 4, 2016.  This payment was made after Lisa Coy's May 23, 2016 telephone call wherein she informed Craig Hospital that the Tyson Foods Inc. self-funded workers' compensation plan would be issuing payment for Patient's care effective May 12, 2016 and after execution of the Contract.

32.     The June 4, 2016 payment was made after Tyson Foods, Inc. and the Health Plan were advised that workers' compensation was involved.

33.     On or about June 15, 2016, Kristi Jackson, who is employed by Tyson Shared Services, Inc. emailed Arkansas Blue Cross Shield, "After many internal discussions, the decision has been made to have all claims from 3/16/16 to present denied as WC [workers' compensation] and request refunds from the providers that were paid for these services.  As you are aware, our Plan specifically excludes injuries that arise from the course of employment therefore these claims are not payable under the Plan."

34.     Two days later, on June 17, 2016, Ms. Jackson asked Arkansas Blue Cross Blue Shield if it was too late to "hold up on the refund requests and to continue to pend claims."

35.     Lee Kidd, who, upon information and belief is Vice President of Benefits for Tyson Shared Services, Inc. called Arkansas Blue Cross and Blue Shield earlier on June 17, 2016 and instructed it to stop the refund requests and put the claims on pending status.

36.     Consistent with Craig Hospital's understanding that the Health Plan would be issuing payment for Patient's care prior to May 12, 2016, Craig Hospital submitted an amended claim for Patient's care spanning from April 14, 2016 through April 28, 2016 to the Health Plan. This claim was in the amount of $315,909.11 and included a surgical procedure provided to the Patient.

37.     On or about June 21, 2016, Lee Kidd emailed Stan Reid, who, upon information and belief, is Vice-President North and South America at Cobb-Vantress, asking Cobb-Vantress to reimburse the Health Plan for claims paid for Patient during the time period spanning from March 29, 2016 to May 11, 2016.  Mr.

Kidd indicated that Tyson's workers' compensation plan would "pick up the front-end and back-end of reimbursement" to the Health Plan.

38.     On or about June 23, 2016, Tyson's workers' compensation plan reimbursed the Health Plan $131,353.38 for dates of service March 16, 2016 through March 19, 2016 and $3,714.99 for dates of service May 12, 2016 through June 23, 2016.[4]

39.     On or about June 23, 2016, Lynette Van Dyke, a representative of Arkansas Blue Cross Blue Shield, emailed other individuals at Arkansas Blue Cross and Blue Shield with the following instructions:

1.      *3/16-3/29:  Deny any **new** claims that come in WC, do not request refunds on claims already paid.  **Do not request refunds on any claims that are paid at this time.***
2.      *5/20-5/11:  Allow claims under medical*
3.      *5/12-Present:  Deny claims as WC.  **Do not request refunds on any claims that are paid at this time.**   [Emphasis in original.]*

40.     Upon information and belief, the instructions set forth in the preceding paragraph were made at the direction of the Health Plan despite the Tyson Foods, Inc.'s, Tyson Shared Services Inc.'s and the Health Plan's knowledge of the Health Plan's exclusion for injuries arising from or in the course of any employment.

---

[4] These dates were taken from a timeline that was attached to an email from Shawna Madewell, of Tynet Corporation to Melisa Yopp of Tynet Corporation dated May 26, 2017.  These dates differ from those provided by Defendants in their discovery responses.  In their discovery responses dated April 2, 2018, Defendants indicated the workers' compensation plan reimbursed the Health Plan for medical services provided to Patient between March 16, 2016 and March 23, 2016 and May 13, 2016 to June 3, 2016.

41.    In addition, Tyson's workers' compensation plan issued payment to other providers for Patient's accident-related medical care for dates of service that pre-date May 12, 2016.

42.    Consistent with Craig Hospital's understanding that the Health Plan was responsible for payment for Patient's care prior to May 12, 2016 and consistent with the Health Plan's instructions to pay claims for an injury that arose in the Course of employment, the Health Plan issued payment to Craig Hospital for patient's care spanning from April 29, 2016 through May 11, 2016 in the amount of $40,178.74 on June 29, 2016.

43.    The Health Plan also issued a denial for the time period spanning from April 29, 2016 through May 11, 2016 on June 29, 2016.  Confused, Craig Hospital checked the status of the claim online and found that it was still showing that the claim processed on June 29, 2016 in the amount of $40,178.74.

44.    On or about July 15, 2016, representatives of the workers' compensation plan and Cobb-Vantress, Inc. had a telephone call with Patient and Patient's spouse.  The representatives advised them that effective July 15, 2016, the workers' compensation plan as denying compensability for Patient's worker's compensation claim due to a positive blood alcohol test on the day of the motor vehicle accident.  One of these individuals told Patient and Patient's wife that "Cobb would be covering all the past medical so there was no need for them to worry about the past medical."

45.    On or about July 25, 2016, Lynette VanDyke from Arkansas Blue Cross Blue Shield, emailed Kristi Jackson at Tyson Shared Services, Inc. informing

her that a high dollar claim came in for dates of service April 14, 2016 through April 28, 2016.  Ms. VanDyke wrote that this claim was "within the time period claims are to be allowed under medical."

46.     The high dollar claim was for the amended claim Craig Hospital submitted to the Health Plan for Patient's surgery.  *See* paragraph 36 above.

47.     In what appears to be an instant message string dated July 25, 2016 between Shanna Morgan, who, upon information and belief is Human Relations Director with Cobb-Vantress, and Dennis Padgett, who, upon information and belief is Senior Director of World Human Resources at Cobb-Vantress, about the additional high dollar claim from Craig Hospital, Mr. Padgett wrote:

> *Yes.  It's all additional charges from Craig submitted as a bill readjustment. Jerry advised that we [upon information and belief, Cobb-Vantress] would split with Comp, but not paying the whole thing.*

48.     On or about October 4, 2016, Kristi Jackson at Tyson Foods instructed Arkansas Blue Cross and Blue Shield to begin requesting refunds for claims paid by the Health Plan for the time period spanning March 29, 2016 through May 11, 2016.

49.     On November 29, 2016, Craig Hospital received a request for a refund of the Health Plan's payment in the amount of $68,512.44.

50.     On December 20, 2016, Craig Hospital received a request for a refund of the Health Plan's payment in the amount of $55,099.22.

51.     Craig Hospital's billing representative contacted Lisa Coy on December 5, 2016.  Ms. Coy returned Craig Hospital's call on December 6, 2016 and informed Craig Hospital that she was going to forward Craig Hospital's voice

mail message to Christina Meador at Tynet Corporation.  At no time did Ms. Coy indicate that workers' compensation would not issue payment for Patient's care prior to May 12, 2016.

52.     It was not until December 27, 2016 that Craig Hospital received a call from Kris (last name unknown) at Tynet Corporation who informed Craig Hospital that Tyson Food's self-funded workers' compensation plan would be paying for the time period spanning May 12, 2016 through July 15, 2016 only.  Kris told Craig Hospital that any care before or after that time period was patient responsibility.

53.     On or about December 28, 2016, Craig Hospital's billing representative spoke with Kristi Jackson at Tyson Shared Services, Inc.  Ms. Jackson informed Craig Hospital that the Patient signed some type of document indicating that his injuries arose from a work-related accident, and, therefore, the Health Plan was denying Patient's claims.

54.     The Health Plan recouped its payment in the amount of $55,099.22 on January 2, 2017.

55.     The Health Plan recouped its payment in the amount of $40,178.74 on January 9, 2017.

56.     The Health Plan recouped its payment in the amount of $68,512.40 on January 6, 2017.

57.     On or about February 8, 2017, Tyson's workers' compensation plan denied coverage for Patient's care at Craig Hospital for the time period spanning from March 30, 2016 through May 11, 2016 on the grounds that Patient's injury was not compensable.

58.    Neither the Health Plan nor Tyson Foods, Inc.'s workers' compensation plan, both of which are self-funded, have issued payment to Craig Hospital for Patient's care for the time period spanning from March 30, 2016 through May 11, 2016.  The billed charges for Patient's care at Craig Hospital for that time period total $542,147.14.

### FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT
#### Against Tynet Corporation, Tyson Foods, Inc.  Tyson Shared Services, Inc. and National Comp Care, Inc.

59.    All preceding allegations are fully incorporated herein by reference.

60.    Craig Hospital and Tynet Corporation, the third-party administrator for Tyson Foods, Inc.'s self-funded worker's compensation plan, Tyson Foods, Inc. Tyson Shared Services, Inc. and National Comp Care, Inc. entered into a workers' compensation agreement (the Contract) on May 31, 2016 that addressed compensability and payment for Patient's care at Craig Hospital.

61.    The Contract states, in relevant part, as follows:

*  The above Payor [Tynet Corporation/Tyson Foods's worker's compensation plan/Tyson Foods, Inc. National Comp Care, Inc.] agrees to accept compensability for the admission of the patient listed above.*

*  The above Payor agrees to pay Craig Hospital for services rendered in compliance with the Blue Cross network agreement between said network and Craig Hospital BC [redacted]% of billed charges.[5]*
*. . .*

*  Payment of hospital bills is required within thirty (30) days of invoice date.  Bills can be FAXED same day of preparation if necessary to meet payment terms.*

---

[5]  The contract rate between Craig Hospital and Anthem Blue Cross Blue Shield is confidential.

62.     Craig Hospital provided medical and rehabilitation care to Patient with the expectation of receiving payment for Patient's care pursuant to the terms of the Contract.   The contract does not state that non-Health Plan Defendants or the Tyson Foods Inc.'s workers' compensation plan's responsibility for payment is effective May 12, 2016. Rather, it states that it/they agree(s) to accept compensability for the patient's admission.  It further states that the Payor "agrees to pay Craig Hospital for services rendered."

63.     The Contract was signed by Melisa Yopp, who has a law degree and has represented Tyson Foods, Inc. in workers' compensation matters.

64.     The Contract and Craig Hospital's claim for breach of the same is non-derivative of the Patient's right to workers' compensation under Arkansas law.

65.     Tynet Corporation, Tyson Foods, Inc.'s Tyson Shared Services, Inc. and National Comp Care, Inc. breached the Contract by failing to accept compensability for Patient's admission to Craig Hospital.

66.     Tynet Corporation, Tyson Foods, Inc.'s Tyson Shared Services, Inc. and National Comp Care, Inc. breached the Contract by failing to issue payment for services rendered within 30 days of the invoice dates.

67.     As a result of Tynet Corporation's, Tyson Foods, Inc.'s, Tyson Shared Services, Inc.'s and National Comp Care, Inc.'s breach of the Contract, Craig Hospital suffered monetary damages.   As noted in paragraph 38 above, the billed charges for Patient's care at Craig Hospital for that time period total $542,147.14.

**SECOND CLAIM FOR RELIEF – VIOLATION OF C.R.S. § 10-3-1115**

***Against Tynet Corporation, Tyson Foods, Inc.  Tyson Shared
Services, Inc. and National Comp Care, Inc.***

68.     All preceding allegations are fully incorporated herein by reference.

69.     C.R.S. § 10-3-1115 prohibits a person engaged in the business of
insurance from unreasonably delaying or denying payment of a claim.

70.     Craig Hospital is a "first party claimant" because it is a participating
provider with Tynet Corporation and Tyson's self-funded workers' compensation
plan. C.R.S. § 10-16-102(46) defines a "participating provider" as a provider, either
within or outside of Colorado, that under a contract with a carrier or with its
contractor or subcontractor, has agreed to provide health care services to covered
persons with an expectation of receiving payment, other that coinsurance,
copayments, or deductibles, directly or indirectly from the carrier."

71.     Tynet Corporation, Tyson Foods, Inc., Tyson Shared Services, Inc.
and National Comp Care, Inc. are engaged in the business of insurance for the
purposes of C.R.S. § 10-3-1115 in self-funding Tyson's workers' compensation
plan in accordance with Arkansas Code Annotated § 11-9-901 et seq., which sets
forth statutory requirements for workers' compensation group self-insurance.

72.     In a memorandum memorializing the July 15, 2016 telephone call
between Tyson's workers' compensation plan, Cobb-Vantress, Inc., Patient and
Patient's spouse, the author of the memorandum wrote that Christina Meador, the
adjuster for Patient's worker's compensation claim, acknowledged that the
workers' compensation plan at issue was "insurance" Ms. Meador advised Patient
and Patient's spouse that, "After today, going forward workers' compensation

**insurance** would not be responsible for any further benefits.  We will pay up through today." [Emphasis added.]

73.     As noted above, Craig Hospital and Tynet Corporation, Tyson Foods, Inc.  Tyson Shared Services, Inc. and National Comp Care, Inc. entered into a Contract wherein Craig Hospital agreed to provide health care services to Patient with an expectation of receiving payment from Tynet Corporation, Tyson Foods, Inc., National Comp Care, Inc. and Tyson Shared Services, Inc.

74.     Craig Hospital has not been paid for Patient's care for the time period spanning from March 30, 2016 through May 11, 2016.   The delay and denial of payment to Craig Hospital by Tynet Corporation, Tyson Foods, Inc., Tyson Shared Services, Inc. and National Comp Care, Inc. is unreasonable given the Contract.

75.     Tynet Corporation's, Tyson Foods, Inc.  Tyson Shared Services, Inc.'s and National Comp Care, Inc.'s failure to issue payment to Craig Hospital is a violation of C.R.S. § 10-3-1115 given that the express terms of the Contract state that Tynet Corporation, Tyson Foods, Inc. Tyson Shared Services, Inc. and National Comp Care, Inc. agreed to accept compensability for patient's admission and that it would pay Craig Hospital for services rendered.

76.     Tynet Corporation's, Tyson Foods, Inc.  Tyson Shared Services, Inc.'s and National Comp Care, Inc.'s coverage for the Patient was not issued in compliance with the Workers' Compensation Act of Colorado, and, therefore, is exempt from compliance with C.R.S. § 10-3-1115.

77.    Craig Hospital is entitled to two times the covered benefit, reasonable attorney's fees and court costs against the Defendants pursuant to C.R.S. § 10-3-1116 for unreasonably delaying or denying payment on Craig Hospital's claims.

### THIRD CLAIM FOR RELIEF – NONDISCLOSURE OR CONCEALMENT (DECEIT BASED UPON FRAUD)
#### Against Tyson Foods, Inc., Tynet Corporation, Tyson Shared Services, Inc., National Comp Care, Inc. and the Health Plan

78.    All preceding allegations are fully incorporated herein by reference.

79.    The Defendants had a duty to disclose to Craig: (1) the Health Plan's exclusion for work-related injuries given Craig's direct question regarding the same; (2) the Health Plan's payments (made in violation of the terms of the Health Plan and the law) were apparently conditioned upon reimbursement from or other deals between the various Tyson entities; and (3) the workers' compensation plan denied compensability for Patient's claim on or about July 15, 2016 and would not be issuing payment to Craig for Patient's pre-May 12, 2016 care.

80.    Defendants failed to disclose and/or concealed the fact that neither the Health Plan nor Tyson Foods, Inc.'s self-funded workers' compensation plan would pay for Patient's care at Craig Hospital prior to May 12, 2016 or that the Health Plan would recoup the payments it made at the time the Contract was negotiated or at any time during the patient's hospitalization at Craig Hospital.

81.    Defendants failed to disclose the Health Plan's exclusion for expenses for injuries arising in the scope of employment (whether or not covered by workers' compensation coverage) despite Craig Hospital's question regarding whether the Health Plan could deny the same.  *See* paragraph 23 above.

82.     Despite knowing of the Health Plan's exclusion for injuries arising in the course and scope of employment (whether or not covered by workers' compensation coverage or not), Defendants failed to disclose or concealed the fact that the Health Plan knowingly instructed Arkansas Blue Cross and Blue Shield to pay Craig Hospital's claims for the time period spanning from March 30, 2016 through May 11, 2016 and not to request refunds of claims paid during that period until approximately October 4, 2016 creating a false impression that Craig Hospital would be paid for the entirety of Patient's care.

83.     Up until approximately February 8, 2017, Defendants also failed to disclose and/or concealed that fact that Tyson Foods Inc.'s self-funded workers' compensation plan denied compensability for Patient's claim for workers' compensation.

84.     The facts set forth in paragraphs 79 through 83 are material.

85.     Defendants failed to disclose and/or concealed these facts set forth in paragraphs 79 through 83 with the intent of creating a false impression of the actual facts in the minds of the relevant representatives of Craig Hospital.

86.     Defendants failed to disclose and/or concealed the facts set forth in paragraphs 79 through 83 with the intent that Craig Hospital take a course of action it may not have taken if it knew the actual facts. 87.  Craig Hospital took such action or decided not to act relying on the assumption that the undisclosed and/or concealed facts did not exist or were different from what they actually were.

87.     Craig Hospital's reliance was justified.

88.     This reliance caused monetary damages to Craig Hospital.

89.     Craig Hospital's claim for nondisclosure or concealment (deceit based upon fraud) is non-derivative of Patient's rights under the Health Plan and/or Tyson Foods, Inc.'s self-funded workers' compensation plan and is not brought under an assignment of benefits.

## FOURTH CLAIM FOR RELIEF – NEGLIGENT MISREPRESENTATION
### Against Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan

90.     All preceding allegations are fully incorporated herein by reference.

91.     Both the Health Plan and the Tyson Foods, Inc.'s worker's compensation plan are self-funded.   Tyson Foods, Inc. is the plan sponsor and plan administrator for the health plan.

92.     As the funder of both plans, Tyson Foods, Inc. knew or should have known at the time it made its internal determination that the workers' compensation plan (rather than the Health Plan) would issue payment to Craig Hospital that the Health Plan had an exclusion for injuries arising in the course and scope of employment (whether or not covered by worker's compensation coverage) when Craig Hospital asked during the May 24, 2016 call with Lisa Coy.

93.     Defendants Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan provided false information to Craig Hospital by issuing payment to Craig Hospital for the care it provided to Patient from the date of Patient's admission to May 11, 2016 after Tyson Food, Inc.'s workers' compensation plan agreed to pay for Patient's care effective May 12, 2016.  Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan made these payments knowingly and intentionally by instructing Arkansas Blue Cross and Blue Shield to pay Patient's

claims that allegedly arose during the course and scope of his employment and were barred by the Health Plan's exclusion for those injuries.

94.     Defendants Tyson Foods, Inc. Tyson Shared Services, Inc. and the Health Plan provided false information to Craig Hospital in failing to promptly deny Patient's claims and by knowingly instructing Arkansas Blue Cross and Blue Shield not to seek refunds for Patient's claim paid by the Health Plan until on or about October 4, 2016.

95.     Defendants Tyson Foods, Inc., Tyson Shared Services, Inc.  and the Health Plan provided false information to Craig Hospital by their silence with respect to their true position regarding payment for Patient's care at Craig Hospital from the date of Patient's admission to May 11, 2016.   Defendants Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan, along with the representations made by Tynet Corporation, falsely led Craig Hospital to believe that it would be paid for the entirety of Patient's care by the Health Plan and Tyson Foods, Inc.'s workers' compensation plan.

96.     Defendants Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan gave such information to Craig Hospital in the course of Tyson Foods, Inc.'s, Tyson Shared Services, Inc. and the Health Plan's business regarding transactions in which they had a financial interest.

97.     Tyson Foods, Inc., Tyson Shared Services, Inc.  and the Health Plan gave the false information to Craig Hospital for the use of Craig Hospital in a business transaction.

98.     Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan, were, at the very least, negligent in obtaining and/or communicating the false information regarding payment to Craig Hospital.

99.     Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan provided the false information regarding payment (combined with their non-disclosure of their true position regarding payment for Patient's care prior to May 12, 2016 until five months after Patient's discharge from Craig Hospital) knowing that Craig Hospital would rely on the false payment information.

100.    Craig Hospital reasonably relied on the information supplied by Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan.

102.    Craig Hospital's reliance upon the information supplied by Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan caused Craig Hospital to incur monetary damages.

101.    Craig Hospital's claim for negligent misrepresentation is non-derivative of Patient's rights under the Health Plan and/or Tyson Foods, Inc.'s self-funded workers' compensation plan and is not brought under an assignment of benefits.

### FIFTH CLAIM FOR RELIEF – UNJUST ENRICHMENT
### *Against Tynet Corporation, Tyson Foods, Inc., Tyson Shared Services, Inc., National Comp Care, Inc. and the Health Plan*

102.    All preceding allegations are fully incorporated herein by reference.

103.    As noted above, the Tyson Foods, Inc. workers' compensation plan and Health Plan are self-funded by Tyson Foods, Inc.

104.     Defendants benefitted from Craig Hospital's provision of medical and rehabilitation services to Patient from March 30, 2016 through May 11, 2016. Namely the provision of medical and rehabilitation services to Patient allowed Defendants to satisfy their obligations to Patient under the Health Plan and workers' compensation plan.

105.     As noted above, during the July 15, 2016 telephone call between Patient, Patient's spouse, Christina Meador, Shawna Madewell, Melisa Yopp, Dennis Padgett and Shanna Morgan, Dennis Padgett told Patient and Patient's spouse that "Cobb will be picking up the past medical that work comp will not be paying."

106.     As noted above, on June 21, 2016 Lee Kidd, who upon information and belief is Vice President of Benefits for Tyson Foods, Inc., emailed Stan Reid of Cobb-Vantress, Inc. asking Cobb-Vantress, Inc. to reimburse the Health Plan for claims paid for the Patient for the time period spanning from March 29, 2016 to May 11, 2016.

107.     Defendants benefitted by the fact that Craig Hospital provided services at a discounted rate.  Upon information and belief, one of the reasons the Health Plan paid Craig Hospital for Patient's care and did not instruct Arkansas Blue Cross and Blue Shield to request a refund of those claims until October 4, 2016 was to allow Cobb-Vantress, Inc., a Tyson subsidiary, to potentially reap the benefit of the discount by reimbursing the Health Plan at a discounted rate.

108.     This benefit was provided at Craig Hospital's expense.

109.    It is unjust for Defendants to have received that benefit without payment.  It is particularly true in this case given that Defendants led Craig Hospital to believe that it would be paid for Patient's care.

110.    Craig Hospital's claim for unjust enrichment is non-derivative of Patient's rights under the Health Plan and/or Tyson Foods, Inc.'s self-funded workers' compensation plan and is not brought under an assignment of benefits.

## SIXTH CLAIM FOR RELIEF – EQUITABLE ESTOPPEL
### *Against Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan*

111.    All preceding allegations are fully incorporated herein by reference.

112.    Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan are equitably estopped from denying coverage for Patient's care at Craig Hospital and/or asserting the Health Plan's exclusion for expenses for injuries arising from or in the course of employment (whether or not covered by workers' compensation insurance).

113.    As noted above, Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan knew about the Health Plan's exclusion for injuries arising from or in the course of employment (whether or not covered by workers' compensation insurance).

114.    Tyson Foods, Inc., Tyson Shared Services, Inc. and the Health Plan's conduct created a false impression that Craig Hospital would be paid by either Tyson's workers' compensation plan, the Health Plan or both.

115.    The conduct that created the false impression included the May 24, 2016 telephone call wherein Lisa Coy downplayed the possibility of the Health Plan

denying coverage for Patient's pre-May 12, 2016 by telling Craig Hospital: (1) that both the Health Plan and workers' compensation plan were self-funded; (2) that she was not "certain they [the Health Plan] will go back and make us [Tyson's workers' compensation plan] pay from the beginning;" (3) that they were all "trying to muddle through this;" and (4) that for "right now we're [Tyson's workers' compensation plan] picking up from May 12th."

116.    The conduct that created the false impression included Tyson Foods, Inc.'s, Tyson Shared Services, Inc. and the Health Plan's failure to timely deny coverage for Patient's care at Craig Hospital based upon the Health Plan's exclusion for injuries arising in the course and scope of employment.

117.    The conduct that created the false impression included Tyson Foods, Inc.'s, Tyson Shared Services, Inc.'s and the Health Plan's decision to instruct Arkansas Blue Cross and Blue Shield to issue payment to Craig Hospital for Patient's claims despite knowing about the Health Plan's exclusion for injuries arising in the course and scope of employment.

118.    The conduct that created the false impression included Tyson Foods, Inc.'s, Tyson Shared Services, Inc.'s and the Health Plan's decision not to instruct Arkansas Blue Cross and Blue Shield to seek repayment for the amounts paid to Craig Hospital for Patient's care until approximately October 4, 2016 despite knowing about the Health Plan's exclusion for injuries arising in the course and scope of employment.

119.    Defendants intended their conduct to be acted upon.

120.     Craig Hospital was ignorant of the true facts regarding the Health Plan's exclusion for injuries arising in the course and scope of employment and Tyson Foods, Inc.'s and health Plan's conduct.[6]

121.     Craig Hospital relied on Tyson Foods, Inc.'s, Tyson Shared Services, Inc.'s and the Health Plan's conduct to its detriment.

## JURY DEMAND

Craig Hospital demands a jury trial on all issues triable by a jury.

WHEREFORE Plaintiff Craig Hospital respectfully prays for entry of judgment in its favor and against Defendants Tyson Foods, Inc., Tynet Corporation, Tyson Shared Services, Inc., National Comp Care, Inc. and the Health Plan an all matters asserted in this Complaint; compensatory damages as permitted by law; attorney's fees; interest as permitted by law; expert witness fees; costs; two times the covered benefit pursuant to C.R.S. § 10-3-1116 and such other and further relief as the Court deems just and proper.

Dated this 14th day of May 2018.

EWING LAW, PC


s/R. Craig Ewing
_____
R. Craig Ewing, #10189
Ewing Law, PC
7175 W. Jefferson Avenue
Suite 1200
Lakewood, CO  80235
T:  303-566-9968
F:  720-302-0300
rcraigewing@gmail.com

---

[6] Not all exclusions related to injuries arising in the course and scope of employment exclude coverage regardless of whether the member is covered by workers' compensation coverage or not.

Address of Plaintiff:

3425 S. Clarkson Street
Englewood, Colorado 80113

## CERTIFICATE OF SERVICE

I certify that on 14th day of May 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Timothy R. Beyer, Esq.
Adam B. Stern, Esq.
BRYAN CAVE LEIGHTON PAISNER, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203

s/R. Craig Ewing
_____
R. Craig Ewing